**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| SPIRIT AEROSYSTEMS, INC., | |
| *Plaintiff,* | |
| vs. | Case No. 09-CV-1144-EFM-KGG |
| SPS TECHNOLOGIES, LLC and PRECISION CASTPARTS CORP., | |
| *Defendants.* | |

## MEMORANDUM AND ORDER

This case involves the sale of a half million nutplates—metal fasteners used to build Boeing airplanes—from Defendant SPS Technologies, LLC, to Plaintiff Spirit Aerosystems, Inc., in 2007 and 2008. The nutplates failed to conform to Boeing's specifications, and Spirit has filed suit alleging breach of contract and breach of express and implied warranties. Defendants filed a motion for partial summary judgment on two claims of breach of implied warranties. Defendants also filed a motion to strike a portion of a supplemental expert report. Spirit has filed a motion for partial summary judgment on six asserted defenses.

First, the Court grants Defendants' motion for partial summary judgment on Spirit's claim of breach of implied warranty of fitness for a particular purpose and denies summary judgment for Spirit's claim of breach of implied warranty of merchantability. Second, the Court grants Defendants' motion to strike a portion of Michael Stevenson's supplemental expert report because Spirit has failed to show that the late submission is justified or harmless. Finally, the Court grants Spirit's motion for partial summary judgment on three defenses and denies summary judgment on three defenses.

# I. Factual and Procedural Background[1]

Spirit is an aerospace manufacturing company that manufactures and supplies aerostructures and related assemblies to its customers in the aerospace industry, including The Boeing Company, for final assembly and incorporation into aircraft. Spirit is a Delaware corporation with its principal place of business in Wichita, Kansas. SPS is a manufacturer of fasteners and fastener systems and assemblies for the aerospace industry and other applications. SPS is a limited liability company organized under the laws of Pennsylvania. SPS made the fasteners at its facilities in Santa Ana, California. Precision Castparts Corporation, the co-defendant, is the sole member of SPS. Precision Castparts is an Oregon corporation with its principal place of business in Oregon. In May 2006, Precision Castparts and SPS entered into a "Guarantee Agreement" to guarantee SPS' performance of its contracts and purchase orders related to Spirit.

Nutplates are metal fasteners that are used to assemble aerospace parts and assemblies. The nutplates consist of a nut and a basket, which also is referred to as a retainer. Boeing publishes specifications for nutplates that are to be installed in Boeing airplanes. The specifications are known as part standards. The nutplates at issue in this case are Boeing Part Standard BACN10JR3CFD. The part standard contains detailed specifications that govern, among other things, the size, material, heat treatment, finish, lubrication, and marking of the nutplates. The part standard also incorporates other documents that further outline the applicable specifications for the part. Only Boeing drafts a Boeing part standard, and only Boeing has the ability to revise a Boeing part standard. Boeing published Revision Y of the BACN10JR3CFD part standard November 21, 2006.

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

Spirit's primary supplier of nutplates was Alcoa Fastening Systems, and Spirit issued orders to SPS when Alcoa could not meet demand. In December 2006, Alcoa requested that Boeing change Revision Y to allow lubrication on the baskets. In January 2007, Alcoa informed Boeing that it could not manufacture nutplates to Revision Y. Later in 2007, Alcoa informed Spirit that the Revision Y drawing was in error and declined to ship nutplates until Boeing changed Revision Y. The nutplates shipped by Alcoa and Republic Fastener Manufacturing Corp. during the relevant period were manufactured to superseded Revision W. Spirit noted the nonconforming condition, and deemed the nutplates manufactured to Revision W acceptable.

In February 2007, Spirit issued a purchase order to SPS for 360,000 nutplates under the BACN10JR3CFD part standard. The purchase orders required that all parts ordered must be to the latest specifications. The part standard in effect at the time was Revision Y. The purchase order incorporated Spirit's general provisions as part of the contract between the parties. One of the provisions stated, "No inspection, test, delay or failure to inspect or test or failure to discover any defect or other nonconformance shall relieve Seller of any obligations under this Purchase Document or impair any rights or remedies of Buyer."[2]

In October 2007, Spirit ordered 240,000 more nutplates. In July 2008, Spirit ordered an additional 480,000 nutplates from SPS. From August 2007 to August 2008, SPS shipped 536,186 nutplates to Spirit and designated them as BACN10JR3CFD nutplates. During this time, a Spirit receiving inspector selected SPS BACN10JR3CFD nutplates for four product audits. The inspections did not include testing for cadmium on the nutplates. The SPS nutplates passed the four product audits performed by Spirit.

Boeing expected the nutplates to include cadmium plating and to function in a way that provided corrosion protection. After receiving Spirit's purchase order, SPS manufacturing

---

[2] Spirit Aerosystems, Inc., General Provisions, Doc. 123, Exh. 31 at 5.

engineers interpreted Revision Y to require removal of molybdenum disulfide solid film lubricant and cadmium from the basket of the nutplates. None of the 536,186 BACN10JR3CFD nutplates that SPS shipped to Spirit from August 2007 to August 2008 had cadmium plating on the basket. In July 2008, Spirit's laboratory discovered that cadmium plating was missing.

Spirit reported that it returned approximately 174,000 unused nutplates to SPS. Boeing estimated that approximately 340,000 of the nutplates already had been incorporated in airplanes that had been delivered to customers. Boeing offered extended warranties on 54 affected airplanes that had been delivered. Boeing told its customers that the nutplates did not present a safety issue. Boeing performed testing to determine whether the lack of cadmium would result in accelerated or more severe corrosion. In 2010, Boeing determined that no action beyond routine maintenance was necessary for the nutplates installed in delivered airplanes.

Boeing removed approximately 20,000 nutplates that had been installed in airplanes that had not yet been delivered to customers. On these airplanes, Boeing decided to remove and replace all nutplates in easy-to-access areas without regard to corrosion risk. Decisions to remove nutplates in difficult-to-access areas were assessed individually. Boeing removed and replaced 95 percent to 98 percent of the nonconforming nutplates that had been installed on fuselages that were still within Boeing's control.

In May 2009, Spirit filed this lawsuit against SPS Technologies and Precision Castparts. Against SPS, Spirit has alleged counts of breach of contract, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and indemnity. The sixth count is for guarantee and indemnity against Precision Castparts. Spirit is seeking damages of approximately $18.5 million.

There are three motions before the Court. First, Defendants have filed a motion for partial summary judgment on two counts of Spirit's complaint related to the breach of an implied

warranty. Also before the Court is Defendants' Motion to Strike Portion of Supplemental Expert Report of Michael Stevenson and to Exclude Related Testimony at Trial. Third, Spirit has filed a motion for partial summary judgment on six of Defendants' asserted defenses.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[3] In applying this standard, the court considers the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[4] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5] The movant bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[6] If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[7] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits.[8] Finally, summary judgment is not a "disfavored

---

[3] Fed. R. Civ. P. 56(c).

[4] *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6] *Thom v. Bristol–Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7] *Id.* (citing Fed. R. Civ. P. 56(e)).

[8] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

procedural shortcut," but is instead an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[9]

In a diversity case, a federal court "applies federal procedural law and the substantive law that would be applied by the forum state."[10] Under Kansas choice-of law rules, the contract law of the state where the contract was entered into controls.[11] Here, both parties agree that Kansas is the place of contracting and that Kansas contract law governs.

### III. Analysis

### A. Defendants' Motion for Partial Summary Judgment on Implied Warranties

The Court first addresses Defendants' motion for partial summary judgment on Spirit's two claims for breach of an implied warranty. Spirit has informed the Court that it is no longer pursuing its claim for breach of implied warranty of fitness for a particular purpose, which was Count IV in its Complaint (Doc. 134). Accordingly, the Court orders that Count IV is dismissed.

The remaining issue is whether SPS is entitled to judgment as a matter of law on Spirit's claim for breach of implied warranty of merchantability. Unlike an express warranty, an implied warranty may exist without an agreement between the parties.[12] Rather, implied warranties arise by operation of law to protect consumers if merchandise fails to meet normal commercial standards.[13] An implied warranty of merchantability sets a minimum standard of merchantability.[14] Under the Kansas version of the Uniform Commercial Code, an implied

---

[9] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[10] *Evans v. Orion Ethanol, Inc.*, 2011 WL 2516929, at *1 (D. Kan. June 23, 2011) (citing *Burnham v. Humphrey Hospitality REIT Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005)).

[11] *Moses v. Halstead*, 581 F.3d 1248, 1252 (10th Cir. 2009) (citing *Layne Christensen Co. v. Zurich Canada*, 38 P.3d 757, 766–67 (Kan. App. 2002)).

[12] *Corral v. Rollins Protective Servs. Co.*, 732 P.2d 1260, 1266 (Kan. 1987).

[13] *Id.*; *Limestone Farms, Inc. v. Deere & Co.*, 29 P.3d 457, 461 (Kan. App. 2001).

[14] *Hodges v. Johnson*, 199 P.3d 1251, 1258 (Kan. 2009).

warranty of merchantability exists in every sale of goods if the seller is a merchant with respect to goods of that kind.[15] To be merchantable, goods must at least:

> (a) pass without objection in the trade under the contract description; and
> (b) in the case of fungible goods, are of fair average quality within the description; and
> (c) are fit for the ordinary purposes for which such goods are used; and
> (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
> (f) conform to the promises or affirmations of fact made on the container or label if any.[16]

These statutory minimum standards assure a buyer that he will have a cause of action for losses suffered if the goods received do not conform at least to normal commercial expectations.[17]

In other words, an ordinary buyer in a normal sale has a right to expect that goods purchased "will not turn out to be completely worthless."[18] At the other end of the spectrum, an ordinary buyer may not expect the goods to be "finest of all possible goods of that kind" without an express warranty.[19] A buyer's protection lies somewhere between the two extremes.[20] Whether a good is merchantable—and the extent of an implied warranty of merchantability— depends on the circumstances of the transaction.[21] A flexible standard is required and depends on the specific facts of each case.[22]

---

[15] Kan. Stat. Ann. § 84-2-314(1).

[16] Kan. Stat. Ann. § 84-2-314(2)(a)-(f).

[17] *Hodges*, 199 P.3d at 1258.

[18] *Id.* (quoting *Int'l Petroleum Servs., Inc. v. S & N Well Service, Inc.*, 639 P.2d 29, 32 (Kan. 1982).

[19] *Id.*

[20] *Int'l Petroleum*, 639 P.2d at 32.

[21] *Hodges*, 199 P.3d at 1258.

[22] *Id.*

As a result, the ultimate determination of whether an implied warranty of merchantability has been breached is a question of fact. The court's initial determination of whether the implied warranty of merchantability applies to a particular transaction is a question of law. This question is limited to whether the case involves a sale of goods by a merchant, as defined by statute.[23] Here, there is no dispute that the nutplates sold by SPS are goods and that SPS is a merchant as contemplated by the UCC. Therefore, the Court finds that the implied warranty of merchantability applies to this transaction as a matter of law. But summary judgment must be denied because the question of whether the nutplates sold by SPS without cadmium on the plate breached an implied warranty of merchantability is a question of fact for the jury.

It is possible for the facts of a particular sale to be so far at one end of the spectrum of possible cases that the matter may be decided as a matter of law on a motion for summary judgment.[24] SPS argues that this is such a case, and that it should be granted summary judgment because Boeing, Spirit's customer, continued to use most of the nutplates. This, SPS asserts, is a definitive indication that the nutplates were fit for their ordinary purpose because Boeing continued to use the nutplates for their ordinary purpose of fastening together airplane components. In other words, SPS argues that a claim for breach of an implied warranty of merchantability must fail when the buyer determines that the goods are acceptable to use and continues to use them as received. SPS cites a handful of cases from other jurisdictions that precluded claims as a matter of law under specific circumstances of continued use by a buyer.[25]

_____

[23] *Id*. at 1259.

[24] *Id*. at 1261; *Hodges v. Johnson*, 178 P.3d 59, 65 (Kan. App. 2008) (Leben, J., dissenting).

[25] *See Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010) (granting motion to dismiss because continued use of washing machine undercut buyer's claim that it failed to serve its ordinary purpose of washing clothes); *Arndt v. Extreme Motorcycles*, 2007 WL 4570861, at *5 (W.D.N.C. Dec. 26, 2007) (finding no possibility that plaintiffs could obtain judgment when buyer drove motorcycle without complaint before and after accident); *Rodeheaver v. CNH America, LLC*, 2007 WL 465212, at *9 (D. Md. Feb. 7, 2007) (granting summary judgment when plaintiff continued to use tractor before and after accident); *DaimlerChrysler Corp. v. Morrow*, 895

The question here is who gets to decide whether the nutplates were merchantable. Kansas law is clear that this is a question of fact for a jury unless the uncontroverted facts are so far at one end of the spectrum of possible cases that there is no possibility a fact-finder could find for the plaintiff.[26] This is not the case here. Further, no Kansas case has held that continued use of a good is an automatic bar to a claim of breach of an implied warranty of merchantability. For example, in *Hodges v. Johnson*, the buyer of a used car continued to drive the car despite a defective air conditioner.[27] The Kansas Supreme Court held that whether the car was merchantable was a factual determination based on the circumstances of the transaction.[28] The Court also recognized that a buyer may buy a good for other purposes in addition to its primary purchase.[29] Specifically, the sale of a used luxury car with a defective air conditioner still may breach an implied warranty of merchantability even if it is perfectly fit for the primary purpose of transportation.[30] In any event, the Court held that the issue was not a question of law and should have been decided by a jury.[31]

Likewise, the nutplates at issue here appear to be fit for the primary purpose of fastening together airplane components. But Spirit asserts that it ordered the nutplates for the secondary purpose of durability and the anticorrosive value of the cadmium-coated plate. That Boeing

---

So.2d 861, 864-65 (Ala. 2004) (reversing denial of motion for judgment as a matter of law, holding that buyer's extensive use of truck for 248,000 miles precluded claim that truck was not fit for its ordinary purposes); *Ford v. Starr Fireworks, Inc.*, 874 P.2d 230, 233-34 (Wyo. 1994) (affirming trial court's finding that fireworks resold to other retailers without complaint were merchantable). *But see White Consol. Indus., Inc. v. Swiney*, 376 S.E.2d 283, 286 (Va. 1989) (holding that continued use of a defective stove is not a defense to a buyer's claim when the defect merely restricted the stove's utility).

[26] *Hodges*, 199 P.3d at 1261; *Hodges*, 178 P.3d at 65.

[27] *Hodges*, 199 P.3d at 1256-57.

[28] *Id*. at 1260-61.

[29] *Id*. at 1260.

[30] *Id*.

[31] *Id*. at 1261.

continued to use most of the nutplates may help persuade a jury to find them merchantable, and thus no breach. But that fact alone is not enough for this Court to dismiss the claim and keep the decision from a jury. Therefore, SPS' motion for partial summary judgment on Spirit's claim of breach of an implied warranty of merchantability is denied.

**B. Defendants' Motion to Strike Portion of Supplemental Expert Report**

Defendants have moved to strike a portion of a supplemental expert report and exclude testimony related to it at trial. Specifically, Defendants argue that two paragraphs of a report submitted by Spirit expert Michael Stevenson should be stricken because the report was served late and because it contains a new opinion that was not expressed in Stevenson's original report. Spirit contends that Stevenson's supplemental report was timely, and even if it was not timely, there are less harsh options available to the Court short of excluding evidence at trial.

A witness retained to provide expert testimony must prepare and sign a written report to be submitted at a time that the court orders.[32] An expert's report must be supplemented in a timely manner if information included in the report is incomplete or incorrect in some material respect.[33] Any additions or changes to the information in the report must be disclosed at least 30 days before trial unless the court orders otherwise.[34] If expert testimony is intended solely to contradict or rebut evidence on the same subject matter identified by another party's expert, it must be disclosed within 30 days after the other party's disclosure unless the court orders otherwise.[35] Such a witness is designated as a rebuttal expert witness.[36]

---

[32] Fed. R. Civ. P. 26(a)(2)(B), (D).

[33] Fed. R. Civ. P. 26(e)(1)-(2).

[34] Fed. R. Civ. P. 26(a)(3)(B), 26(e)(2).

[35] Fed. R. Civ. P. 26(a)(2)(D)(ii).

[36] *E.E.O.C. v. JSB USA, LLC*, 2013 WL 3302429, at *6 (D. Colo. July 1, 2013).

Here, the Court ordered that plaintiff's expert reports were due July 20, 2012, and defendants' expert reports were due August 24, 2012. Supplemental disclosures were due September 17, 2012.[37] The parties had agreed there would be no rebuttal experts.[38] The discovery deadline was October 5, 2012. Stevenson's original report was timely submitted July 20, 2012. Stevenson's supplemental report was submitted September 24, 2012. Defendants have moved to strike two paragraphs in which Stevenson concluded that testing showed that the nutplates could have been manufactured according to the part standard with cadmium on the baskets.[39]

Defendants characterize Stevenson's supplemental report as untimely because the new information could have been included in his original July 20 report. Spirit characterizes Stevenson's supplemental report as timely because it was submitted before the discovery deadline and before Stevenson's deposition set for October 3, 2012. Neither party mentions the Court's September 17 deadline for supplemental disclosures. Additions or changes to expert witness reports are included as supplemental disclosures under Federal Rule of Civil Procedure 26(e).[40] Therefore, the Court finds that Stevenson's supplemental report was submitted after the September 17 deadline for supplemental disclosures.

More importantly, the issue here is whether Stevenson's new conclusions are allowable in a supplemental report, regardless of timing. Allowable supplementation of an expert report

---

[37] Minute Order, Doc. 85.

[38] Minute Order, Doc. 59.

[39] Supplemental Report, Doc. 106, Exh. 3 at 5-6 ("The baskets of BACN10JR3CFD nutplates could have been fabricated in 2007 and 2008 per the specification of Boeing Part Standard BACN10JR Revisions Y and AA and met the requirements of the applicable cadmium-plating standard."). SPS is not moving to strike the rest of the six-page supplemental report. Stevenson stated that the intent of his supplemental report was to supplement his July 20 report and to respond to a defense expert report submitted August 24.

[40] Fed. R. Civ. P. 26(e)(2).

can occur only in certain limited circumstances.[41] Under Rule 26(e), a supplemental report is allowed when a party or expert learns that the original report is incomplete or incorrect in some material respect.[42] Specifically, that means a supplemental report may correct inaccuracies or fill in the blanks of an incomplete report based on information that was not available at the time of the original report.[43] But a lack of diligence in pursuing information that could have been available at the time of the original report does not mean the same as information that was not available.[44] Rule 26(e) does not allow a party to submit an amended or rebuttal report not based on new information.[45] Allowable "new information" does not include a response to another expert's report in a supplemental report if the information was available when the original report was due.[46]

Rule 26(a) requires an expert report to contain "a complete statement of all opinions the witness will express."[47] The expert report is necessary to allow the opposing party a reasonable opportunity to prepare for cross examination and possibly arrange for expert testimony from other witnesses if necessary.[48] A supplemental expert report may be excluded under Rule 37(c) if

---

[41] *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006).

[42] *Id.* (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953-54 (10th Cir. 2002)).

[43] *Id.*; *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, 2008 WL 4937651, at *2 (D. Kan. Nov. 17, 2008).

[44] *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 421 (S.D. Texas 2012).

[45] *See Sibley v. Sprint Nextel Corp.*, 2013 WL 1819773, at *3 (D. Kan. April 30, 2013) (finding supplemental expert reports generally improper unless inaccuracies are corrected).

[46] *Id.* at *7; *RMD, LLC v. Nitto Americas, Inc.*, 2012 WL 5398345, at *4-5 (D. Kan. Nov. 5, 2012) (noting difference between proper supplemental report that corrects information and improper rebuttal report that responds to another expert report); *Anderson v. Seven Falls Co.*, 2013 WL 3771300, at *9 (D. Colo. July 18, 2013) (collecting cases holding that party may not add support for case in chief or cure oversights in original report under guise of rebuttal).

[47] Fed. R. Civ. P. 26(a)(2)(B)(i); *Henderson v. Nat'l R.R. Passenger Corp.*, 412 Fed. Appx. 74, 80 (10th Cir. 2011).

[48] *Henderson*, 412 Fed. Appx. at 80-81 (citing *Jacobsen*, 287 F.3d at 953).

it states an additional opinion or seeks to strengthen an opinion expressed in the original report.[49] Rule 26(e) may not be used to provide an extension of the expert report deadline or sandbag one's opponent with issues that should have included in the original report.[50] Other courts have found that this includes testing that could have been completed by the time the original report was due.[51]

Here, Spirit has acknowledged that it considered conducting a demonstration to see if the cadmium would smear shortly before Stevenson's report was due July 20, 2012, but Spirit chose not to because the demonstration could not be completed in time. Spirit asserts it became clear that the demonstration needed to be conducted only after receiving a defense expert report. But in his deposition, Stevenson testified that he was aware that whether the nutplate could be manufactured according to the Boeing part standard without the cadmium smearing was a key issue in this litigation before he wrote his original report. Thus, Stevenson could have conducted the demonstration for inclusion in his July 20 report, but Spirit chose not to have him do so. Later, Spirit chose not to ask this Court for permission to designate a rebuttal expert or for permission to serve a supplemental report to include the additional testing.[52] Stevenson's new

---

[49] *Cook*, 580 F. Supp. 2d at 1169 (citing *Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003)) ("'To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given.'").

[50] *Id.*; *Beller*, 221 F.R.D. at 695; *Dixie Steel Erectors, Inc. v. Grove U.S., L.L.C.*, 2005 WL 3558663, at *6 (W.D. Okla. Dec. 29, 2005) (noting that allowing late supplementation of preliminary report substantially undermines goal of reducing civil litigation expense and delay).

[51] See, e.g., *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 640-42 (D. Hawai'i 2008) (striking supplemental expert report based on additional field work that could have been conducted before the original expert report deadline); *Palmer v. Asarco Inc.*, 2007 WL 2254343, at *4 (N.D. Okla. August 3, 2007) (striking supplemental affidavit of expert based on environmental testing that could have been performed in timely fashion); *Dixie Steel*, 2005 WL 3558663, at *8-10 (noting that court should not permit supplemental report if violation of expert report requirement involves testing that could have been included in original report).

[52] See *Dixie Steel*, 2005 WL 3558663, at *8 ("If the proponent of expert testimony desires to have the expert do significant additional work after the opposing party has disclosed its expert case, that matter should promptly be raised with the court.") (citing *Miller v. Pfizer, Inc.*, 356 F.2d 1326, 1332 (10th Cir. 2004)).

opinion based on the additional testing did not correct incorrect information or complete incomplete information in his July 20 report because the new information could have been included in the original report if Spirit had chosen to do the testing earlier. Thus, the Court finds that the new opinion related to additional testing in Stevenson's September 24 report exceeds the scope of a proper supplemental report.

Under Rule 37, if a party fails to supplement information as required by Rule 26(a) or (e), the offending party is not allowed to use that information at trial unless it can show that the failure was substantially justified or is harmless.[53] Substantial justification requires a showing that a violation is justified because there is a genuine dispute about whether the party was required to comply with a discovery rule.[54] A rule violation is harmless if there is no prejudice to the other party.[55] The burden to show that the failure was justified or harmless is on the offending party.[56] This Court has broad discretion to determine if a Rule 26 violation is justified or harmless.[57] In making the determination of whether the failure was justified or harmless, courts in the Tenth Circuit consider the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the [offending] party's bad faith or willfulness."[58]

Here, the new information in Stevenson's supplemental report was a surprise to Defendants, and the failure to complete the testing in time for the July 20 report prejudiced

---

[53] Fed. R. Civ. P. 37(c)(1).

[54] *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995).

[55] *Niles v. Am. Airlines, Inc.*, 563 F. Supp. 2d 1208, 1213 (D. Kan. 2008).

[56] *Nguyen*, 162 F.R.D. at 680.

[57] *Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

[58] *Henderson*, 412 Fed. Appx. at 81 (quoting *Woodworker's Supply*, 170 F.3d at 993).

Defendants because it was too late for Defendants to obtain additional discovery, designate a rebuttal witness, or adequately prepare for an effective cross examination at Stevenson's deposition.[59] The supplemental report was a surprise because it came after the deadline for supplemental disclosures, the parties had agreed there would be no rebuttal experts, and Stevenson was not designated as a rebuttal expert. Thus, submitting Stevenson's test results and new opinion that asserts the nutplates could have been made according to the Boeing part standard—two months after his original report was submitted and after all opposing expert reports were due—is inherently prejudicial.[60]

Second, Spirit suggests whatever prejudice exists can be cured by allowing additional discovery. At a minimum, this option would require allowing Defendants to depose Stevenson a second time and allowing Defendants time to designate a rebuttal expert witness. Third, although this option would not disrupt a trial, because a trial date has not been set, it would significantly disrupt pretrial preparation. As for the fourth factor, Defendants do not accuse Spirit of bad faith. But the Court notes that Spirit admits to making two deliberate decisions—deciding first not to conduct the testing before the deadline for Stevenson's report, and then deciding to conduct the testing anyway for a supplemental report submitted after the deadline without asking the Court's permission to do so. These were willful decisions and not the result of unintentional oversights.

In this case, allowing more discovery to accommodate test results that could have been completed on time defeats the purpose of expert report deadlines and impacts this Court's ability

---

[59] See *Gordon v. CompResults, LLC*, 2013 WL 656886, at *8-9 (D. Kan. Feb. 22, 2013); *Kirkbride v. Terex USA, LLC*, 2013 WL 5354586, at *1 (D. Utah Sept. 10, 2013) (granting motion to strike supplemental report that added four new opinions because moving party no longer had opportunity to provide rebuttal report or investigate new opinions in one week before scheduled deposition of expert); *Dixie Steel*, 2005 WL 3558663, at *8 ("Moreover, a bedrock principle of civil procedure is that litigants who have diligently complied with the rules should not, by virtue of their diligence, be put to a disadvantage at the hands of litigants who have violated the rules.").

[60] See *Dixie Steel*, 2005 WL 3558663, at *9 ("In an expert-intensive case like this one, a Rule 26(a)(2) violation, in which the proponent's expert accomplishes his most significant data acquisition and analysis only after he has rendered his report and the opposing experts have rendered their reports, is inherently prejudicial.").

to manage its docket in a just and orderly manner.[61] Most importantly, Spirit does not expressly argue that Stevenson's supplemental report is justified or harmless. Instead, Spirit suggests only that Defendants be allowed additional discovery and faults Defendants for not requesting it. Thus, Spirit has not carried its burden to show that submitting Stevenson's new opinion based on testing completed after his original deadline is justified or harmless. As a result, Rule 37(c)(1) requires that Spirit is not allowed to use that information in a motion, hearing, or trial in this matter. The Court grants Defendants' motion and orders the striking of the final paragraph on page 4 and the final conclusion on page 5 of Stevenson's supplemental expert report.

### C. Spirit's Motion for Partial Summary Judgment on Defenses

The third motion before the Court is Spirit's motion for partial summary judgment on six defenses. One of the most important purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.[62] By rule, partial summary judgment may be used to dispose of defenses.[63]

### 1. Failure to Inspect

Spirit argues that the SPS defense of Spirit's failure to inspect should be dismissed on summary judgment because of the clear language of the contract between the parties. Specifically, SPS stated as one of its defenses that "Spirit's claims are barred, either in whole or in part, because Spirit failed to timely and/or adequately inspect the shipments received from

---

[61] See *Dixie Steel*, 2005 WL 3558663, at *8-9 ("[T]he court and the public have an interest in the orderly disposition of the business of the court—where one party's violations can be cured only by substantial revamping of the scheduling order on which the opposing parties and the court have relied, the violating party should not ordinarily be afforded a cure opportunity which would make a new schedule a fait accompli. The court should not cede control of its docket to litigants who fail to comply with the rules.").

[62] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[63] Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.").

SPS, and the certifications accompanying each shipment, which showed that the basket portion of the Nut Plate Assembly Products provided by SPS were not cadmium plated."[64]

Under Kansas law, the interpretation and legal effect of a contract is a question of law for a court to decide, not a jury.[65] Therefore, if the contract is unambiguous, the construction of a contract is a question of law appropriate for summary judgment.[66] This issue may be decided on summary judgment because it is controlled by a provision in the contract between the parties. Here, the contract contains the following provision:

> **11. ACCEPTANCE AND REJECTION**
> a. Buyer shall accept the products or give Seller notice of rejection or revocation of acceptance ("rejection" herein), notwithstanding any payment, prior test or inspection, or passage of title. No inspection, test, delay or failure to inspect or test or failure to discover any defect or other nonconformance shall relieve Seller of any obligations under this Purchase Document or impair any rights or remedies of Buyer.[67]

Excluding inapplicable terms, the remaining relevant terms state that no failure to inspect or failure to discover any defect shall impair any rights or remedies of the buyer. In other words, Spirit's remedy under the contract cannot be diminished by its own failure to inspect the nutplates.

SPS' defense, essentially, is that Spirit should shoulder some (if not all) of the blame for failing to notice that the nutplates were not built according to Boeing's specifications. Defendants assert that Spirit's culpability must be considered when determining the parties' relative fault for damages. And Defendants contend that whether Spirit's own actions are a

---

[64] Def. SPS Technologies, LLC's Am. Answer to Compl. and Affirmative Defenses, Doc. 111 at 8.

[65] *Wolfe Elec., Inc. v. Duckworth*, 266 P.3d 516, 534 (Kan. 2011).

[66] *Harrison Western Corp. v. Gulf Oil Co.*, 662 F.2d 690, 695 (10th Cir. 1981).

[67] Spirit Aerosystems, Inc., General Provisions, Doc. 123, Ex. 31 at 5.

proximate cause of its consequential damages present a genuine issue of material fact that prevents summary judgment.

Generally, this is true.[68] But the issue here involves a contract, and the interpretation and legal effect of a contract is a question of law, not a question of fact for a jury.[69] The plain language of the contract shows the parties' intention that Spirit's ability to recover damages may not be limited even if it chose not to inspect the nutplates. That means even if a jury would decide that Spirit is partially at fault for not inspecting the nutplates, the legal effect of the contract is that such a finding would not make a difference in calculating Spirit's damages because the parties agreed that a failure to inspect would not diminish Spirit's remedy. Thus, the issue is resolved by the Court as a question of law appropriate for summary judgment.

Defendants further contend that the UCC, industry standards, Spirit's course of conduct, and Spirit's contract with Boeing all required Spirit to inspect the nutplates. But the Kansas version of the UCC provides that "the express terms of an agreement and any applicable course of performance, course of dealing, or usage of trade must be construed whenever reasonable as consistent with each other. If such a construction is unreasonable: Express terms prevail over course of performance, course of dealing, and usage of trade."[70] Here, the contract provides that any remedy may not be impaired by Spirit's failure to inspect. So even if Spirit's course of performance with SPS and Boeing and airline industry standards indicate that Spirit should have inspected the nutplates—as SPS claims—the express terms of the contract prevail. Again, the express terms of the contract are that any failure to inspect may not diminish Spirit's remedy. In

---

[68] See *Burton v. R.J. Reynolds Tobacco Co.*, 181 F. Supp. 2d 1256, 1270 (D. Kan. 2002) ("Questions of actual and proximate cause are questions of fact for a jury, unless 'all the evidence relied upon by a party is undisputed and susceptible of only one inference.'"); *Garay v. Mo. Pac. R.R. Co.*, 38 F. Supp. 2d 892, 899 (D. Kan. 1999) ("Normally, causation is a question of fact for the jury to decide.").

[69] See *Wolfe*, 266 P.3d at 534.

[70] Kan. Stat. Ann. § 84-1-303(e)(1).

other words, Spirit may not be held accountable even if it chose not to inspect the nutplates. Therefore, the issue is a question of law. Accordingly, the Court grants Spirit's Motion for Partial Summary Judgment on SPS' defense of Spirit's failure to inspect.

### 2. Comparative Fault

Spirit argues that it is entitled to summary judgment on SPS' comparative fault defenses because they are not valid defenses to a claim for breach of contract. Specifically, SPS' answer listed one of its defenses as "Spirit's claims are barred, either in whole or in part, because its damages, if any, were caused by the sole, contributory or comparative fault or other misuse or alteration of the Nut Plate Assembly Products by Spirit or a third party."[71] SPS cites Kan. Stat. Ann. § 60-258a for authority to apply comparative fault to any damages resulting from a breach of an implied warranty.

By its own terms, the statute is limited to civil actions involving "damages for negligence."[72] Therefore, under Kansas law, "[t]he use of comparative negligence theory is not proper in breach of contract actions."[73] That's because comparative negligence is a tort-based theory and cannot be applied to contract law.[74] Therefore, Kan. Stat. Ann. § 60-258a—Kansas' comparative negligence statute—does not apply here.

This outcome is controlled by *Broce-O'Dell Concrete Products, Inc. v. Mel Jarvis Construction Co.*, in which the Kansas Court of Appeals held that Kan. Stat. Ann. § 60-258a

---

[71] Def. SPS Technologies, LLC's Am. Answer to Compl. and Affirmative Defenses, Doc. 111 at 8.

[72] Kan. Stat. Ann. § 60-258a(a).

[73] *Haysville U.S.D. No. 261 v. GAF Corp.*, 666 P.2d 192, 199 (Kan. 1983); *Broce-O'Dell Concrete Prods., Inc. v. Mel Jarvis Constr. Co.*, 634 P.2d 1142, 1145 (Kan. App. 1981) ("It is well settled that contributory negligence is no defense to a breach of contract.").

[74] *Haysville*, 666 P.2d at Syl. ¶ 6; *Griffith v. Mt. Carmel Med. Ctr.*, 842 F. Supp. 2d 1359, 1364 (D. Kan. 1994) (noting that the Kansas Supreme Court "has consistently refused to apply comparative fault in non-tort cases such as breach of contract").

does not apply in an action for consequential damages for breach of contract.[75] In *Broce-O'Dell*, the jury awarded the claimant one-third of the amount sought in a contract action for breach of implied warranty or express warranty. The inference was that the jury excluded two-thirds of the amount based on a jury instruction that required the jury to exclude any loss caused by the claimant.[76] The paying party appealed, arguing that the comparative negligence jury instruction should have been used. If the jury instruction based on the comparative negligence statute would have been used, there would have been no recovery because the jury found the claimant more than 50 percent at fault.[77] Essentially, the claimant was still entitled to one-third of what it claimed despite causing most of the loss by its own actions. The Court affirmed the jury's award of one-third of the amount claimed—even though the claimant was more at fault than the paying party—holding that the comparative negligence statute does not apply to a contracts claim but holding that the jury instruction excluding loss caused by the other party was appropriate.[78]

The result is similar here. The debate is one of semantics. By its terms, Kan. Stat. Ann. § 60-258a is limited to negligence actions and does not apply in a contracts action. But Defendants still may argue to exclude any consequential damages that were caused by Spirit's actions.[79] On this point, Spirit agrees that Defendants are entitled to argue that Spirit's damages were not caused by SPS' breach of contract or breach of warranty.

---

[75] *Broce-O'Dell*, 634 P.2d at 1143.

[76] *Id*. at 1144.

[77] *Id*.; Kan. Stat. Ann. § 60-258a(a) (allowing recovery of damages for negligence only "if such party's negligence was less than the causal negligence of the party or parties against whom claim for recovery is made").

[78] *Broce-O'Dell*, 634 P.2d at 1145.

[79] See *id*. ("Of course 'fault' does play some part in contract actions in that it may bear on the broader question of damages. One who breaches a contract is liable for damages caused by the breach; he is not liable for damages flowing from other causes whether or not those other causes have the connotations of culpability associated with the term 'fault.'").

The relevant issue is whether to allow the proposed defense as listed in the Pretrial Order.[80] Citing the Kansas pattern jury instruction for duty of a buyer in a products liability case, the Pretrial Order lists the essential elements of SPS' comparative fault defense as:

(1) Spirit had a duty to use ordinary care for its own safety and protection with respect to its purchase of the nutplates.
(2) Spirit also had a duty to exercise ordinary care with reference to those obvious defects about which Spirit knows and understands or about which Spirit should know and understand.
(3) Spirit breached one or more of the above duties.
(4) Spirit's breach was the cause of all or a portion of its damages.[81]

Notably, the commentary for the pattern instruction notes that the instruction only applies to negligence cases.[82] But the elements listed in the Pretrial Order differ from the pattern instruction by omitting references to negligence and comparative fault. Instead, it allows SPS to prove that "Spirit's breach was the cause of all or a portion of its damages," an element not listed in the pattern instruction. Under *Broce-O'Dell*, a defendant is allowed to assert a defense that it is not the cause of all the plaintiff's damages.[83] And a defendant can assert a defense that asks a jury to find that some of the claimant's loss could have been prevented by reasonable care and diligence.[84] So even though Kan. Stat. Ann. § 60-258a or the pattern instruction do not give SPS authority to assert a tort-based "comparative fault" defense, SPS is allowed to assert a defense

---

[80] Pretrial Order, Doc. 110 at 25-26.

[81] Pretrial Order, Doc. 110 at 25-26.

[82] PIK Civ.4th 128.06 (Notes on Use) ("The instruction is applicable only in those cases where liability is predicated on negligence and the defendant contends that the buyer or consumer failed to observe defects or dangerous conditions, failed to use the product according to the manufacturer's direction and warning, or used the product in an abnormal manner.").

[83] *Broce-O'Dell*, 634 P.2d at 1145; *see also* Kan. Stat. Ann. § 84-2-715(2)(a) ("Consequential damages resulting from a seller's breach include any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise[.]").

[84] See *Broce-O'Dell*, 634 P.2d at 1144-45 (upholding jury instruction that stated, "If you find that [the subcontractor] is entitled to recover damages for breach of implied warranty or express warranty, then in fixing the amount of damages you should not include any loss that he could have prevented by reasonable care and diligence or was caused by [the general contractor].").

based on proving that Spirit caused some or all of its own damages by failing to use ordinary care. The net effect of not allowing a "comparative fault" defense under Kan. Stat. Ann. § 60-258a, as was the case in *Broce-O'Dell*, is that Spirit may recover whatever portion of its consequential damages were caused by SPS even if a jury decides that Spirit was more at fault than SPS. So even though the "comparative fault" label may be misleading, the essential elements of SPS' sixth affirmative defense listed in the Pretrial Order are allowable in this action. Summary judgment on this defense is denied.

### 3. Unreasonable use

Neither party separately addresses in detail the viability of SPS' comparative fault defense based on unreasonable use. The essential elements listed in the Pretrial Order are: "(1) Spirit knew that the nutplates lacked cadmium plating on the basket. (2) Spirit unreasonably continued to use the nutplates after acquiring that knowledge."[85] The Pretrial Order cites the pattern instruction for a products liability instruction for unreasonable use as a defense/comparative fault for breach of an express or implied warranty.[86] The pattern instruction cites K.S.A. 60-258a and a products liability case as authority.[87] As noted earlier, Kan. Stat. Ann. § 60-258a does not apply to actions based solely on contracts.[88] So similarly, the comparative fault statute cannot be used as a defense here. To the extent that SPS could prove that Spirit caused some or all of its own damages through the unreasonable use of the nutplates after knowing they lacked cadmium plating on the basket, the defense is allowed. Therefore, SPS is

---

[85] Pretrial Order, Doc. 110 at 25.

[86] Pretrial Order, Doc. 110 at 25.

[87] PIK Civ.4th 128.16.

[88] *Fed. Sav. & Loan Ins. Corp. v. Huff*, 704 P.2d 372, 377 (Kan. 1985)

not precluded from asserting this defense, as presented in the Pretrial Order, at trial. Accordingly, Spirit's Motion for Summary Judgment on this defense is denied.

### 4. Unclean hands

Spirit argues that it is entitled to summary judgment on SPS' unclean hands defense because the defense does not apply to claims for money damages. In its answer, SPS listed one of its defenses as "Spirit's claims are barred, either in whole or in part, by the equitable principles of waiver, estoppel, unclean hands, acquiescence, laches or similar equitable defenses."[89] The Pretrial Order lists the essential elements of the defense as requiring SPS to prove: "(1) Spirit seeks affirmative relief in equity with respect to its transaction with SPS; (2) Spirit is guilty of inequitable conduct with respect to that transaction."[90]

Affirmative relief in equity usually means declaratory or injunctive relief and not monetary damages.[91] A money judgment is a legal remedy, and some other type of court order is equitable.[92] In the context of contracts, equitable relief includes court orders granting specific performance, reformation, or cancelation of a contract.[93] The unclean hands defense really just means that in equity, as in law, the plaintiff's fault is relevant to the question of what, if any, remedy the plaintiff is entitled to.[94]

Here, Spirit is not seeking any affirmative relief in equity. In other words, Spirit is not seeking specific performance, reformation, or cancelation of the contract or declaratory or injunctive relief. Spirit is seeking money damages and is not seeking any non-monetary equitable

---

[89] Def. SPS Technologies, LLC's Am. Answer to Compl. and Affirmative Defenses, Doc. 111 at 7.

[90] Pretrial Order, Doc. 110 at 24.

[91] *Lafoy v. HMO Colorado*, 988 F.2d 97, 99-100 (10th Cir. 1993).

[92] *Hammons v. Ehney*, 924 S.W.2d 843, 846 (Mo. 1996).

[93] *Frazier v. Goudschaal*, 295 P.3d 542, 552 (Kan. 2013).

[94] *Scheiber v Dolby Laboratories, Inc.*, 293 F.3d 1014, 1021 (7th Cir. 2002).

relief.[95] Therefore, as a matter of law, SPS cannot prove the first essential element that "Spirit seeks affirmative relief in equity with respect to its transaction with SPS."[96] Accordingly, the Court grants Spirit's Motion for Summary Judgment on SPS' unclean hands defense.

### 5. Good faith and fair dealing

Next, Spirit argues that it is entitled to summary judgment on SPS' defense based on Spirit's duty of good faith and fair dealing. In its answer, SPS listed one of its defenses as "Spirit's claims are barred, either in whole or in part, because it breached the implied duty of good faith and fair dealing."[97] The Pretrial Order lists the following as essential elements that SPS would have to prove:

(1) The existence of a contract between Plaintiff Spirit and Defendant SPS, which includes an implied duty to act in good faith and to deal fairly, and to cooperate with each other in obtaining the goals of the contract;

(2) The duty of good faith, fair dealing, and cooperation included a requirement that Spirit inform SPS of material facts related to its performance of the contract;

(3) Spirit breached the duty of good faith, fair dealing, and cooperation in at least the following ways: (a) failing to disclose to SPS that other manufacturers were unable and/or refused to manufacture to Revision Y, and (b) failing to disclose to SPS that other manufacturers were allowed to manufacture to an earlier version of the BACN10JR Part Standard.

(4) Spirit's breach of the duty of good faith, fair dealing, and cooperation bars its claim for damages in whole or in part.[98]

Under Kansas contract law, there is an implied duty of good faith and fair dealing in every contract, and the duty imposes affirmative and negative obligations.[99] The Kansas version of the Uniform Commercial Code mandates that "[e]very contract or duty within the uniform

---

[95] Pretrial Order, Doc. 110 at 27-30.

[96] Pretrial Order, Doc. 110 at 24.

[97] Def. SPS Technologies, LLC's Am. Answer to Compl. and Affirmative Defenses, Doc. 111 at 7.

[98] Pretrial Order, Doc. 110 at 24-25.

[99] *Estate of Draper v. Bank of America, N.A.*, 205 P.3d 698, 710 (Kan. 2009) (noting exception of employment-at-will contracts).

commercial code imposes an obligation of good faith in its performance and enforcement."[100] The purpose of the implied duty of good faith is to protect the reasonable expectations of the parties by implying terms in the agreement.[101]

There is an implied condition that both parties cooperate with each other to reach the goals of the contract.[102] A party to a contract agrees by implication to do everything to accomplish the result intended by the parties.[103] And there is an implication in every contract that each party will not do anything to prevent the other party from carrying out its part of the agreement.[104] Often, a party is expected to take affirmative steps to see that a condition of the agreement occurs.[105] Also, there is an implied condition to not make it impossible for the other party to perform.[106] The scope of conduct prohibited by the duty of good faith is confined by the purposes and express terms of the contract.[107] Essential terms of a contract cannot be supplied by the implication of good faith and fair dealing if the minds of the parties have not met.[108]

Generally, good faith, fair dealing, and reasonableness in contract matters are questions of fact.[109] Summary judgment may be appropriate if the facts are uncontroverted and establish that a defined standard has not been met.[110] A question of good faith may be decided as a matter

---

[100] Kan. Stat. Ann. § 84-1-304.

[101] *Kindergartners Count, Inc. v. DeMoulin*, 249 F. Supp. 2d 1233, 1243 (D. Kan. 2003).

[102] *M West, Inc. v. Oak Park Mall, L.L.C.*, 234 P.3d 833, 846 (Kan. App. 2010).

[103] *Bonanza, Inc. v. McLean*, 747 P.2d 792, 801 (Kan. 1987).

[104] *Id.*

[105] *M West*, 234 P.3d at 846.

[106] *Id.* at 847.

[107] *SCO Group, Inv. v. Novell, Inc.*, 578 F.3d 1201, 1224 (10th Cir. 2009).

[108] *Bonanza*, 747 P.2d at 801.

[109] *Estate of Draper*, 205 P.3d at 712.

[110] *Id.*

of law under proper circumstances.[111] For example, when the nonmoving party has the burden of proof, summary judgment may be granted if there is no evidence to support an essential element of the nonmovant's claim or defense.[112]

The implied duty of good faith and fair dealing is derivative in nature, meaning that it does not create new contract terms but grows out of existing ones.[113] The duty of good faith and fair dealing only amplifies duties and rights already existing under the terms of the agreement.[114] The goal of the implied duty is to help accomplish the parties' express promises, so the breach of the duty is actionable when it relates to an aspect of performance under the terms of the contract.[115] Accordingly, a plaintiff asserting a breach must point to a term in the contract that a defendant has allegedly violated by failing to abide by the good faith spirit of that term.[116]

Likewise, a defendant asserting a plaintiff's breach of the duty of good faith and fair dealing as a defense also must point to a term in the contract to prevail.[117] SPS points to language in the purchase order that requires that "[a]ll material, parts and or assemblies ordered herein shall be to the latest respective applicable engineering drawings and/or specifications unless specific revision numbers or drawing issues are shown on the purchase order."[118] Specifically,

---

[111] *Kansas Penn Gaming, LLC v. HV Properties of Kansas, LLC*, 662 F.3d 1275 (10th Cir. 2011).

[112] *Adams v. Am. Guarantee and Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[113] *Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1179 (D. Kan. 1990).

[114] *Id.* at 1184.

[115] *Id.* at 1179.

[116] *Warkentine v. Salina Pub. Schools, Unified Sch. Dist. No. 305*, 921 F. Supp. 2d 1127, 1134 (D. Kan. 2013); *H & L Assocs. of Kansas City, LLC v. Midwestern Indem. Co.*, 2013 WL 3854484, at *3 (D. Kan. July 25, 2013).

[117] Spirit argues that the breach of the duty of good faith and fair dealing may not be asserted as a defense. But Spirit fails to produce relevant authority for its proposition. Other courts have allowed the duty of good faith and fair dealing as a defense. *See, e.g., George K. Baum Advisors LLC v. Sprint Spectrum, L.P.*, 2012 WL 6085095, at *2 (D. Kan. Dec. 6, 2012); *Biel Loanco III-A, LLC v. Labry*, 862 F. Supp. 2d 766, 778, 780-83 (W.D. Tenn. 2012); *CitiMortgage, Inc. v. Allied Mortg. Group, Inc.*, 2012 WL 5258745, at *5, *8 (E.D. Mo. Oct. 24, 2012).

[118] Purchase Order from Spirit-Wichita, Doc. 124, Exh. 9 at 4.

Defendants allege that Spirit failed to tell SPS that other manufacturers were not following Revision Y and failed to tell SPS that it was allowing other manufacturers to follow an earlier version of the part standard.[119] Defendants admit that the contract does not expressly state that Spirit must inform SPS of problems with the part standard. But Defendants argue that the duty of good faith and fair dealing required Spirit to inform SPS of material facts related to its obligation to manufacture to the latest specification. Defendants assert that this means that Spirit had a duty to alert SPS about a possible error in the nutplate specification incorporated into the contract documents.

To avoid summary judgment, SPS must show controverted facts related to an aspect of performance under the terms of the contract.[120] And SPS, as the nonmoving party with the burden of proof, must show some evidence to support an essential element of its defense.[121] Here, SPS has produced evidence, when viewed in the light most favorable to SPS, that would support its defense that Spirit knew that other manufacturers were not making nutplates according to the latest specification and failed to disclose that information to SPS. Spirit does not dispute that it accepted nutplates from Alcoa and Republic that were manufactured to the outdated Revision W. Further, SPS has shown that this information relates to its contractual obligation to manufacture nutplates to the latest specification at issue, Revision Y. The facts are in dispute about why the other manufacturers did not follow Revision Y and whether there was an error in Revision Y. Ultimately, questions of good faith and fair dealing are questions of fact.[122] Therefore, whether SPS had a reasonable expectation that Spirit would tell them about a

---

[119] Pretrial Order, Doc. 110 at 24-25.

[120] See *Draper*, 205 P.3d at 712; *Pizza Mgmt.*, 737 F. Supp. at 1179.

[121] See *Adams*, 233 F.3d at 1246.

[122] *Draper*, 205 P.3d at 712; *Ascend Media Prof'l Servs., LLC v. Eaton Hall Corp.*, 531 F. Supp. 2d 1288, 1297 (D. Kan. 2008); *CIT Group/Sales Fin., Inc. v. E-Z Pay Used Cars, Inc.*, 32 P.3d 1197, 1202 (Kan. App. 2001)

problem with Revision Y is a question for a jury. The Court concludes that SPS has provided sufficient evidence to demonstrate the existence of genuine issues of material fact that precludes the Court from granting summary judgment. For that reason, summary judgment must be denied.

### 6. Intervening and Superseding Cause

Finally, Spirit argues that it is entitled to summary judgment on SPS' intervening and superseding cause defense. In its answer, SPS listed one of its defenses as: "Spirit's claims are barred, either in whole or in part, because Spirit's damages, if any, were caused by the intervening or superseding acts of third parties for whom SPS is not responsible."[123] The Pretrial Order lists this as a defense, but it does not list the essential elements that SPS must prove. So it is not clear which acts SPS is alleging are the intervening and superseding cause of Spirit's damages.

An intervening cause is one that actively operates to produce harm to another after a defendant's act or omission has been committed.[124] An intervening cause eliminates a defendant's liability only if it supersedes the defendant's act. In other words, an intervening and superseding cause breaks the connection between the defendant's initial act and the harm caused. In addition, if the intervening cause is foreseen or reasonably could have been foreseen by the defendant, its act may be considered the proximate cause even considering the intervening cause.[125] A juror must consider whether the intervention of a new, independent cause acting alone would have been enough to have caused the harm. If so, the defendant responsible for the

---

("Determining good faith inherently involves a question of fact regarding the reasonable expectations of the parties at the time of contract formation[.]").

[123] Def. SPS Technologies, LLC's Am. Answer to Compl. and Affirmative Defenses, Doc. 111 at 8.

[124] *Puckett v. Mt. Carmel Reg'l Med. Ctr.*, 228 P.3d 1048, 1060 (Kan. 2010).

[125] *Id.*

initial act would not be at fault.[126] But a defendant is still at fault if the intervening cause is put into operation by the defendant's wrongful act.[127]

Here, SPS' initial act that allegedly caused Spirit's damages is shipping nutplates without cadmium on the basket. SPS fails to point to another act, either by Spirit or Boeing, that could be considered a new, independent intervening cause that acting alone would have caused Spirit's damages. SPS hints that Spirit's failure to inspect the nutplates and Boeing's failure to correct a defective part standard or warn SPS about it are intervening and superseding causes. But none of these acts alone could have caused Spirit's damages. Spirit's alleged failure to inspect the nonconforming nutplates, if considered an intervening cause, was put into operation by SPS' initial shipping of the nonconforming nutplates. And Boeing's alleged failures to act cannot be considered intervening because any failure to act related to a defective part standard would have been before SPS made the nutplates. Therefore, SPS has failed to carry its burden to show the possible existence of an intervening and superseding cause. Accordingly, the Court grants Spirit's Motion for Summary Judgment on SPS' defense premised on intervening and superseding causes.

To summarize, Spirit's motion for partial summary judgment is granted for the asserted defenses of failure to inspect, unclean hands, and intervening and superseding cause. Summary judgment is denied for the defenses of comparative fault, unreasonable use, and the breach of the duty of good faith and fair dealing. The Court notes this order only addresses legal theories, and a motion in limine is not before this Court at this time. Nothing in this order is meant to address which factual matter may be admitted at trial.

---

[126] *Id.* at 1061.

[127] *Id.* at 1064.

**IT IS ACCORDINGLY ORDERED** this 27th day of November, 2013, that Defendants' Motion for Summary Judgment (Doc. 119) is granted in part and denied in part.

**IT IS FURTHER ORDERED**, that Defendants' Motion to Strike Portion of Supplemental Expert Report (Doc. 103) is granted.

**IT IS FURTHER ORDERED**, that Spirit's Motion for Summary Judgment (Doc. 118) is granted in part and denied in part.

**IT IS SO ORDERED**.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE